**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DAVID BELL**<br>10506 Watford Lane<br>Fredericksburg, VA 22408<br><br>**PLAINTIFF**<br><br>**v.**<br><br>**DEPARTMENT OF VETERAN AFFAIRS,**<br>810 Vermont Ave NW<br>Washington, DC 20420<br>**DEFENDANT** | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | <br><br>**Case No.:**<br><br><br>**JURY DEMAND** |

## COMPLAINT

David Bell ("Plaintiff"), through his counsel, brings this complaint against the Hunter Holmes McGuire VA Hospital ("Defendant") under Title VII of the Civil Rights Act and alleges as follows:

## PARTIES

Plaintiff, David Bell, is an individual residing at 10506 Watford Lane, Fredericksburg, VA 22408 and was employed by Hunter Holmes McGuire VA Hospital, at all relevant times.

Defendant, Department of Veteran Affairs operates the Hunter Holmes McGuire VA Hospital located at 1201 Broad Rock Blvd., Richmond, VA 23249. The Defendant's principal place of business is 810 Vermont Ave NW, Washington, DC 20420.

## JURISDICTION AND VENUE

1. Subject matter jurisdiction is valid, because the District Court has jurisdiction over cases arising under federal law or involving federal questions.

2. Additionally, venue is proper because the Defendant is subject to the Court's personal jurisdiction.*28* USC *1391(e)(1)*.

**STANDARD OF REVIEW**

3. To establish a hostile work environment claim, under TItle VII, Plaintiff must show they were subjected to discrimination that was severe or pervasive enough to alter the terms and conditions of their employment and create an abusive working environment *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

4. The court will also consider the frequency, severity and nature of the conduct, as well as the context in which it occurred. Lastly, the court will consider how others in the workplace were treated *Perkins v. Int'l Paper Co*., 936 F.3d 196, 210 (4th Cir. 2019).

5. Title VII prohibits discrimination on the basis of national origin, which can include discrimination based on an individual's ancestry, culture, or language 42 U.S.C. § 2000e-2(a)(1) *See Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 117 (4th Cir. 2021).

6. Retaliation by an employer against an employee who engages in protected activities is also prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State Gov't §§ 20-266(a).

7. The Plaintiff must show they engaged in a protected activity and the employer took adverse action against them *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

8. An employee may establish a failure to accommodate case against an employer if the employee can prove: (1) he was an individual with a disability within the meaning of the ADA; (2) the employer had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the position; and (4) the employer refused to make such accommodations. *Rhoads v. FDIC*, 257 F.3d 373, 387 n. 11 (4th Cir.2001).

## EXHAUSTION OF REMEDIES

9. On December 10, 2021, the Plaintiff filed an Equal Employment Opportunity complaint against officials of the VA Office of Information and Technology in Washington, DC.

10. On May 26,2023, a final agency decision was issued, which included a right of appeal and right to file a civil action.

11. This civil action was timely commenced and all conditions precedent for this suit have been met and/complied with by the Plaintiff.

## BACKGROUND

12. The Plaintiff was working at the McGuire Hospital as a Computer Assistant in Richmond, Virginia.

13. The Plaintiff applied for the IT Specialist position but on September 27, 2021 he was not selected.

14. The Plaintiff was not selected due to his race, color, prior protected activity, and disability.

15. The former Area Manager was responsible for the Plaintiff not being selected for the position.

16. The former Area Manager stated the need to hire fewer employees of the Plaintiff's race, because a whistleblower complaint was filed which named the former Area Manager.

17. The Plaintiff was more qualified for the IT Specialist position than the applicant who was selected due to having a degree, 10-point Veteran preference, work for Dell and HP, and is familiar with the location of the position.

18. The Plaintiff was required to perform duties which were not in his normal job duties and normally would require multiple people.

18. These extra duties include but is not limited to the termination duties. This was not in the Plaintiff's normal job duties.

19. The Area Manager began requiring the Plaintiff to perform an unnecessary amount of tasks with providing additional help.

20. Specifically between March 14 and March 18 he was assigned an unreasonable number of terminations.

## CLAIMS FOR RELIEF

### COUNT I- RACIAL DISCRIMINATION

The Plaintiff was discriminated against by the Defendant because of his race, when he was denied for a position he was properly qualified. The Defendant stated they did not want to hire any more people who are the Plaintiff's race. It is reasonable the Defendant knew the Plaintiff's race because the Plaintiff was already employed by the Defendant prior to applying to the IT Specialist Position. Therefore, the Defendant denied the Plaintiff for the IT position because they intentionally did not want to hire someone for the role which was the Plaintiff's race.

### COUNT II- RETALIATION

The Plaintiff faced retaliation after applying for the IT Specialist Position. When the Plaintiff did not get the IT Specialist Position, he began receiving more work duties. Some of these duties were designed to be handled by two people, but the Plaintiff was not given anyone to help him. The apex of the unreasonable additional tasks occurred between March 14 and 18, 2022. During this period the Plaintiff was required to do multiple terminations and drops. These tasks were out of the scope of the regular duties for the Plaintiff. This caused the Plaintiff stress and made it difficult for him to complete his normal work duties. The Defendant intentionally added tasks which were extreme and severe to the Plaintiff , therefore the Defendant retaliated against.

Additionally, the Plaintiff was faced with retaliation for filing prior complaints. The Plaintiff filed a previous EEO complaint. So, after the Plaintiff applied for the position the

Defendant decided to retaliate against him. This retaliation began shortly after applying to the new position. Therefore, the Defendant retaliated against the Plaintiff, because he made prior complaints.

**COUNT III- FAILURE TO ACCOMMODATE**

Plaintiff incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

The Plaintiff's disability influenced the Defendant's decision in not selecting him because the Defendant did not want to accommodate the Plaintiff. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *42* USC § 1210(2)(A).

It is reasonable to believe the Defendant had notice of the Plaintiff's disability because the Plaintiff was already employed by the Defendant. Since the Plaintiff was a current employee, the Defendant knew of the Plaintiff's disability. Therefore, the Plaintiff satisfies this prong of the failure to accommodate test.

The Plaintiff's accommodation would have been reasonable, because the Defendant previously accommodated the Plaintiff for his current position. The Plaintiff has been accommodate for his disability while working in his current position. It is unreasonable that the Defendant is unable to make the same accommodations for the Plaintiff based on their prior actions. Therefore, the Plaintiff satisfies this prong of the failure to accommodate test.

The Defendant did not want to accommodate the Plaintiff so they denied the Plaintiff the IT Specialist Position rather than granting him the position. The Defendant knew they would need to adjust and properly accommodate the Plaintiff. However, the Defendant, based on their conduct, did not want to accommodate the Plaintiff, so they denied him the position. This denial was clearly

based on his disability because he was more qualified than the person that was selected. Therefore the Plaintiff satisfies the failure to accommodate prong, because the Defendant did not want to accommodate the Plaintiff.

Based on the clear evidence of the Defendant's conduct, the Defendant violated the ADA regulations on accommodating disabilities. The Defendant meets all four prongs of the test to prove they failed to accommodate for the Plaintiff's disability.

**COUNT IV- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

The Plaintiff experienced intentional infliction of emotional distress when the Defendant forced him to perform duties which were not in his job description. The Defendant punished the Plaintiff for applying for the IT Specialist Position by adding extra tasks to his workload. This conduct was unreasonable and extreme because these tasks would normally take multiple people to accomplish quickly and effectively.

The purpose of the Defendant's conduct was to cause the Plaintiff stress and diminish his morale. The conduct is deliberate and methodical. The Defendant knew the Plaintiff needed assistance with the amount of work he was required to complete on each shift, but refused to hire anyone else. Therefore, the Defendant intentionally inflicted emotional distress on the Plaintiff when they gave the Plaintiff an unreasonable amount of tasks to complete.

**COUNT IV- HOSTILE WORK ENVIRONMENT**

Plaintiff incorporates by reference all other paragraphs of the Complaint as if fully set forth herein.

The Plaintiff experienced a hostile work environment based on a culmination of incidents, which caused Plaintiff unable to properly perform his job duties.

The Plaintiff began experiencing a hostile work environment when he was forced to perform extra daily tasks. These tasks became more over time. The Plaintiff was not able to properly perform their regular duties because the extra tasks were taking a long time. The Plaintiff requested help and was denied. This denial left the Plaintiff to do duties which were designed for multiple people to be able to perform effectively. This added stress to the Plaintiff because he was overloaded with work which was not normal. There the Defendant created a hostile work environment for the Plaintiff by adding more duties to their job.

## DAMAGES

Based on the conduct described above, Plaintiff requests the Court award punitive damages against the Defendant. Defendant has shown disregard for the rights of the Plaintiff, and clear demonstration of intent to cause emotional distress. The Defendant's actions impacted the Plaintiff's ability to perform his duties and his personal well-being. Punitive damages are needed to send a message to not only the Defendant, but to the entire industry, that this type of conduct will not be tolerated. Accordingly, the Plaintiff requests the Court award punitive damages against the Defendant in an amount that is appropriate to deter similar conduct in the future.

Respectfully submitted,

/s/ Charles Tucker Jr.

Charles Tucker Jr.
#993515
*Attorney for Plaintiff*
8181 Professional Place 207
Hyattsville, MD 20785
charles@tuckerlawgroupllp.com
301.577.1175